BEACONSFIELD TOWNE HOUSE CONDOMINIUM TRUST *vs.*
DAVID ZUSSMAN, trustee,[1] & others[2].

Norfolk.    March 4, 1987. — January 11, 1988.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH & O'CONNOR, JJ.

*Limitations, Statute of. Real Property,* Condominium, Lease. *Condominiums,* Common area. *Statute,* Construction.

Where the creator of a condominium trust entered into a 155-year lease of
a portion of the common areas owned by the trust, purporting to establish
a leasehold interest in twelve parking spaces for persons not members
of the trust, an action by the trust alleging that the lease of the parking
spaces violated the language of G. L. c. 183A, § 5(*c*), prohibiting the
division of condominium common areas, was subject to the twenty-year
statute of limitations provided by G. L. c. 260, § 21, for an action
seeking recovery of land, rather than the six-year period of limitations
now set forth in G. L. c. 260, § 2. [482-486] WILKINS, J., concurring.
O'CONNOR, J., dissenting.

CIVIL ACTION commenced in the Superior Court Department
on April 25, 1984.

The case was heard by *Suzanne V. DelVecchio,* J., on mo-
tions for summary judgment.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Henry P. Sorett* for the plaintiff.

*Charles R. Bennett, Jr.,* for the defendant.

LIACOS, J. This case concerns the validity of a lease of
a portion of the common areas owned by the Beaconsfield
Towne House Condominium at 120 Beaconsfield Road, Brook-

---

[1] Of the Davran-St.Paul Trust, and individually.

[2] Davran-St.Paul Trust, 120 Beaconsfield Realty Trust, and Selma
Zussman, individually and as trustee of the 120 Beaconsfield Realty Trust.

line. The lease in issue purports to create a leasehold interest in twelve parking spaces for persons not members of the condominium trust. The trial judge treated the claim as one sounding in contract, and granted summary judgment for the defendant on the ground that G. L. c. 260, § 2 (1986 ed.), which imposes a six-year period of limitations on contract claims, barred the action. The plaintiff appealed, and we transferred the case to this court on our own motion. We agree with the plaintiff that the governing statute of limitations is G. L. c. 260, § 21 (1986 ed.), providing that actions to recover land must be commenced within twenty years after the cause of action accrues. Thus, we reverse the judgment.[3]

The plaintiff, Beaconsfield Towne House Condominium Trust, was created under G. L. c. 183A, as amended, to manage the building and common facilities at 120 Beaconsfield Road, Brookline. Previously the defendant David Zussman had owned the property. On December 8, 1970, David Zussman, conveyed the premises, including the parking spaces at issue, to his wife, the defendant Selma Zussman, in her capacity as trustee of the defendant 120 Beaconsfield Realty Trust. On June 10, 1977, Selma Zussman executed a written lease of the parking spaces to David Zussman as trustee of the defendant Davran-St. Paul Trust. On the same day, Selma Zussman conveyed the premises by master deed to the plaintiff, the newly-created Beaconsfield Towne House Condominium Trust, of which David Zussman was a trustee. On June 16, 1977, the lease and then the master deed were recorded contemporaneously at the Norfolk registry of deeds.[4]

The master deed states that it is subject to the lease, which runs for 155 years.[5] Subsequent to the recording of the con-

---

[3] This opinion concerns solely the issue whether the plaintiff's action is time-barred, and does not reach the underlying merits of the action.

[4] Both documents were officially recorded at 9:56 A.M. on June 16, 1977. The lease immediately precedes the master deed in the records of the registry of deeds.

[5] The lease provides that the lessor, Beaconsfield Towne House Condominium Trust, bears all expenses associated with the parking spaces. The annual rent is $1.

dominium trust master deed, Selma Zussman executed two purported amendments to the lease on June 29, 1977, and July 29, 1977, respectively. The first purported amendment deleted descriptions of certain parking areas, leaving intact only a list of numbered parking spaces. The second purported amendment, as relevant here, added a right of ingress and egress to allow access to the enumerated parking spaces.

The essence of the plaintiff's claim is a violation of G. L. c. 183A, § 5 (*c*) (1986 ed.), in that the defendant's lease of the parking spaces in question violated the statute's explicit provisions prohibiting division of the common areas of the condominium.[6] Although there are also allegations of breach of fiduciary obligations, the major aspect of the action concerns an interest in land.

This court has recognized that ownership of a condominium unit constitutes an interest in land. See *Franklin* v. *Spadafora,* 388 Mass. 764, 767 (1983) (trustees of a condominium have interest in land in condominium complex). The concept of condominiums as realty arguably existed even at common law,[7] but began to flourish in contemporary times with the advent of enabling legislation. See *Barclay* v. *DeVeau,* 384 Mass. 676, 682 (1981), and articles cited. General Laws c. 183A (1986 ed.), originally enacted in 1963, St. 1963, c. 493, § 1,

---

[6] The plaintiff's complaint begins by stating: "This is an action for injunctive and declaratory relief brought by a condominium trust seeking to set aside and void a lease for 155 years and two amendments thereto." The plaintiff further alleges that, as the Beaconsfield Towne House Condominium Trust, it brings this action under G. L. c. 183A, § 10 (4), and that the defendant Davran-St. Paul Trust took a leasehold interest in twelve parking spaces which should have been included within the common area of the Trust. Further, the complaint specifically alleges the lease to be null and void under the terms and provisions of G. L. c. 183A, § 5 (*c*).

[7] There are early English cases referring to individual ownership of chambers in existing buildings. In this country, several courts acknowledged the possibility of individual ownership of separate parts of a building, including this court in *Loring* v. *Bacon,* 4 Mass. 575, 576 (1808) ("each of the parties has a distinct dwelling-house adjoining together, the one being situated over the other"). See Schwartz, Condominium: A Hybrid Castle in the Sky, 44 B.U.L. Rev. 137, 141-142 (1964). See also Berger, Condominium: Shelter on a Statutory Foundation, 63 Colum. L. Rev. 987 n.5 (1963).

was designed to "clarify the legal status of the condominium in light of its peculiar characteristics." *Grace* v. *Brookline,* 379 Mass. 43, 52 (1979). We have recognized that the statute specifies certain minimum requirements for establishing condominiums. *Tosney* v. *Chelmsford Village Condominium Ass'n,* 397 Mass. 683, 686 (1986).

As part of these requirements, the statute contains a comprehensive scheme defining and governing the common areas of a condominium complex.[8] Each unit owner is entitled to a proportional, undivided interest in such areas, G. L. c. 183A, § 5 (*a*), and this percentage interest cannot be altered absent the consent of *all* unit owners, c. 183A, § 5 (*b*).[9] Furthermore, c. 183A, § 5 (*c*), mandates explicitly that the common areas must remain undivided, and that any covenant or provision to the contrary is null and void.[10]

"The statutory language, when clear and unambiguous, must be given its ordinary meaning. . . . When the use of the

---

[8] Parking facilities are included within the statutory definition of common areas. G. L. c. 83A, § 1. See *Tosney, supra* at 687.

[9] Neither the lease nor the amendments to it purport to have the assent of all unit owners.

[10] In relevant part, G. L. c. 183A, § 5, provides:

"(*a*) Each unit owner shall be entitled to an undivided interest in the common areas and facilities in the percentage set forth in the master deed. Such percentage shall be in the approximate relation that the fair value of the unit on the date of the master deed bears to the then aggregate fair value of all the units.

"(*b*) The percentage of the undivided interest of each unit owner in the common areas and facilities as expressed in the master deed *shall not be altered without the consent of all unit owners, expressed in an amended master deed duly recorded. The percentage of the undivided interest in the common areas and facilities shall not be separated from the unit to which it appertains,* and shall be deemed to be conveyed or encumbered with the unit even though such interest is not expressly mentioned or described in the conveyance or other instrument.

"(*c*) The common areas and facilities shall remain undivided and no unit owner or any other person shall bring any action for partition or division of any part thereof, except as provided in sections seventeen, eighteen and nineteen. Any covenant or provision to the contrary shall be null and void." (Emphasis supplied.)

ordinary meaning of a term yields a workable result, there is no need to resort to extrinsic aids such as legislative history. . . . Moreover, the statutory language is the principal source of insight into legislative purpose." (Citations omitted.) *Bronstein* v. *Prudential Ins. Co. of Am.,* 390 Mass. 701, 704 (1984).[11] The crux of the plaintiff's claim under § 5 (*c*) is that the provision in the master deed referring to the lease of the parking spaces violates the clear statutory language prohibiting division of the common areas and is therefore null and void. The language of § 5 (*c*) is unambiguous. A claim under the section, whatever the merits of that claim may prove to be, constitutes an action concerning an interest in land.[12]

As noted above, under § 5 (*b*) the unanimous consent of all unit owners to an amendment of the master deed is required to change the percentage of the undivided interest of each owner in the common areas. The record contains no indication, nor do the defendants assert, that such consent was given. Therefore, it is immaterial whether the reference in the master deed to the lease constituted notice to present or subsequent unit owners.[13]

---

[11] The language of c. 183A, § 5 (*c*), does not present the problem of an ambiguous meaning of a key word or phrase. See *Barclay* v. *DeVeau, supra* at 680 (examining legislative history of G. L. c. 183A, § 10 (*a*), to interpret term "proportionate interest"). Nor is this a matter of the statutory language not specifically addressing the issue at hand, thus leaving it to the parties to work out arrangements for themselves. See *Tosney, supra* at 687 (where c. 183A is silent, condominium association could maintain physically separate "limited common areas" for exclusive use and expense of certain unit owners).

[12] We have recognized that the issue of the validity of a lease may be challenged properly by an action seeking injunctive relief. See *Attorney Gen.* v. *Ellis,* 198 Mass. 91, 97-98 (1908) (referring to a lessee's claim of right within the context of R. L. c. 202, § 20, the predecessor statute to G. L. c. 260, § 21).

[13] We note, moreover, that even under the defendants' theory of notice in the master deed, the subsequent amendment of July 29, 1977, allowing access to the parking spaces, would have no effect. In the absence of unanimous consent to amendment of the master deed, it would not comport with statutory specifications.

The defendants argue, however, that the plantiff's complaint is based on alleged fraudulent dealings, which is a claim essentially contractual in nature, and thus barred by the six-year statute of limitations. See G. L. c. 260, § 2. Accepting this argument, the motion judge relied essentially on *Nantucket* v. *Beinecke,* 379 Mass. 345 (1979). *Nantucket* is inapposite. That case involved a claim under the Conflict of Interest Law, G. L. c. 268A (1986 ed.). The purpose of that law is to restrain municipal employees from maintaining a financial interest in contracts made by a municipal agency. *Id.* at 350. The subject matter of the action in *Nantucket* happened to concern a tax title deeded by certain town officials. *Id.* at 346.

In *Nantucket,* the plaintiff argued that no statute of limitations should apply to actions under c. 268A. We rejected that claim. In order to find the applicable statute of limitations, the court looked to the "'gist of the action' or the essential nature of the plaintiff's claim." *Id.* at 348, quoting *Hendrickson* v. *Sears,* 365 Mass. 83, 85 (1974). We concluded that "an action brought under G. L. c. 268A, § 21, sounds in tort." *Nantucket* v. *Beinecke, supra.* Therefore, we held that the tort statute of limitations applies to such actions, "whether land is involved or not." *Nantucket, supra* at 349.

*Nantucket* involved a claim predicated on an alleged conflict of interest, the essence of which is breach of official duty. A claim under c. 268A could be rooted in a variety of transactions that municipal officials undertake, whether involving land or not. In contrast, an action under c. 183A, § 5, governing condominium common areas, solely concerns land. It therefore falls within the ambit of G. L. c. 260, § 21, conferring a twenty-year time limit on actions for recovery of land. Since the relevant statute of limitations is evident, application of the "essential nature" test used in *Nantucket, supra,* is unnecessary. Even under that test, however, the proper conclusion it dictates in this case is that the essential nature of this claim is of an interest in property and not that of a claim of breach of fiduciary obligation for procurement by fraud. In short, the proper issue in this case is whether the lease in issue is void as being in violation of G. L. c. 183A, § 5.[14]

---

[14] To accept the defendants' approach would do serious damage to the underlying values of proper condominium development, as prescribed by

The judgment, in so far as it applied a six-year statute of limitations to the claim under c. 183A, § 5 (*c*), is reversed, and the case remanded for a trial on that claim.

*So ordered.*

WILKINS, J. (concurring). I agree with the court that, to the extent that the complaint alleges a violation of G. L. c. 183A, § 5 (*c*), but only to that extent, the plaintiff's claim is not barred by any statute of limitations. The language of G. L. c. 260, § 21, that "[a]n action for the recovery of land shall be commenced . . . only within twenty years after the right of action .· . . accrued," makes unnecessary any attempt to discern the gist of the action. This is an action to recover land which was allegedly conveyed in violation of G. L. c. 183A, § 5 (*c*), and, therefore, the nature or gist of the wrong is irrelevant.

I write in concurrence (1) to make clear that all claims of fraud and breach of fiduciary duty are time-barred; (2) to disassociate myself from suggestions in the court's opinion concerning the merits of the plaintiff's claim; and (3) to acknowledge that Justice O'Connor in his dissent has wisely pointed out that the challenged lease was recorded before any condominium was created and that the condominium arrangement was expressly subject to the lease, possible barriers to the plaintiff's success on its § 5 (*c*) claim.

O'CONNOR, J. (dissenting). It is not possible to appreciate the "gist" of this action without focusing in some detail on the complaint, little of which is exposed by the court's opinion. The complaint consists of a brief preliminary statement followed by six counts. In the preliminary statement, the plaintiff

G. L. c. 183A. While we do not reach the merits of the claim, we have noted previously that "[i]t does not seem either equitable or logical that . . . unit owners should be required to pay a portion of the expenses for facilities from which they receive no benefit." *Tosney, supra* at 687. To seize on the scattered and unnecessary allegations of fiduciary misconduct in a somewhat prolix .complaint would reach a result that would undermine a clearly expressed legislative policy.

states that the action is for injunctive and declaratory relief brought by a condominium trust to "set aside and void" a certain lease of indoor parking spaces and amendments thereto "entered into by the creator of the condominium trust" under terms described as "unconscionable."

Count One alleges that "[b]ut for the [d]efendants' wrongful actions, these parking spaces *would be* the property" (emphasis added) of the condominium trust, that the defendant David Zussman "undertook a fiduciary responsibility to said [t]rust and to its beneficiaries," and that the defendant Selma Zussman "undertook a fiduciary responsibility" to the condominium trust. Count One further states that the lease of the parking spaces and the master deed creating the condominium trust were entered into and recorded simultaneously, that the "effect of [the] lease was to take twelve parking spaces which *should have been* included within the common area of the [c]ondominium [t]rust and alienate them to a stranger . . . contrary to the rights and best interests of the . . . [t]rust" (emphasis added), that the lease "was made between related persons for their own interests and not the interests of the [c]ondominium [t]rust" and "was not negotiated at arms' length," and that "[t]he lease is an inequitable, unfair and improper conveyance of the rights of the [c]ondominium [t]rust as well as an entirely unconscionable burden upon it." "Wherefore," says Count One, the plaintiff seeks relief in the form of a judgment "cancelling the lease" and "declaring the lease . . . to be void."

Count Two "incorporates and restates all of the allegations set out in Count One," and then makes the following conclusory assertions of law: the master deed creating the condominium trust "causes all parking spaces within the building comprising the locus of said trust to be common area property of the Trust"; the lease "creates a fee simple ownership in the lessees"; and "[b]ecause the lease purports to deed out property which is part of the common areas of the condominium trust property to a party who is not a unit owner in the condominium, said lease is null and void under the terms and provisions of G. L. c. 183A, § 5 (c)." The prayers for relief in Count Two are identical to those in Count One.

Count Three seeks reformation of the lease, and the remaining counts seek damages and an accounting. All counts incorporated by reference the facts set forth in Count One together with allegations bearing on damages.

It may be that *one* of the plaintiff's claims, set forth in Count Two, is that, independent of any violation of fiduciary duty, the defendants violated G. L. c. 183A, § 5 (*c*) (1986 ed.). Section 5 (*c*) provides: "The common areas and facilities shall remain undivided and no unit owner or any other person shall bring any action for partition or division of any part thereof, except as provided in sections seventeen, eighteen and nineteen. Any covenant or provision to the contrary shall be null and void." The court is wrong, however, when it asserts that "[t]he essence of the plaintiff's claim is a violation of G. L. c. 183A, § 5 (*c*) (1986 ed.)" (emphasis added), and that "[a]lthough there are also allegations of breach of fiduciary obligations, the major aspect of the action concerns an interest in land." Mention of c. 183A, § 5 (*c*), is made only in Count Two. It is clear from the language of the complaint that the "gist" of the action is at least as much a claim that the Zussmans violated their fiduciary duties to the plaintiff by subjecting what would become the common area of the condominium to an unconscionable lease for their own benefit as it is a claim under c. 183A, § 5 (*c*).

That the plaintiff makes a claim, the gist of which is breach of fiduciary duty, is not contraindicated by the fact that the relief the plaintiff seeks is the setting aside or reforming of the parking space lease. The gist of the claim is not determined by the relief sought but rather by the wrong asserted. *Nantucket v. Beinecke,* 379 Mass. 345, 349 (1979). In that case, the plaintiff town sought a declaration that a certain deed to the defendant was voidable because title to the land which was the subject of the deed had initially been transferred in violation of the Conflict of Interest Law, G. L. c. 268A (1986 ed.). The town also sought an order requiring reconveyance of the land to the town. The town argued that, if any statute of limitations applied to its action, it was G. L. c. 260, § 31, governing actions by the Commonwealth for the recovery of land.

In *Nantucket,* this court held the short "tort statute of limitations is applicable to the variety of types of actions possible under G. L. c. 268A, § 21, whether land was involved or not." We concluded that "the essence of an action under the statute is breach of official duty, and the fact that the plaintiff seeks to recover land as opposed to money or some specific chattel is only of subsidiary importance." *Id.* at 349. We supported that statement with a footnote as follows: "Compare this situation to a suit to set aside a conveyance of land for fraud. The problem of whether to apply the statute of limitations for fraud or the statute of limitations for recovery of land in such a situation is analyzed in Annot., 118 A.L.R. 200 (1939): '[I]n the majority of jurisdictions wherein the question has arisen, it has been held that, within the meaning of limitation statutes as ordinarily worded, a suit brought by one not in possession of land to obtain a decree setting aside a deed thereof as having been procured by fraud is one for relief on the ground of fraud, rather than an action for the recovery of real property.'" *Id.* at 349 n.5. No principled distinction can be made between the claim in *Nantucket* that the deed should be set aside because it resulted from a breach of official duty and the claim here that the lease should be set aside or reformed because it resulted from a breach of fiduciary duty.

If the plaintiff's claim under G. L. c. 183A, § 5 (*c*), is independent of the claims of breach of fiduciary duty, so that it merits separate consideration, nevertheless the breach of fiduciary duty claims must be dealt with. Yet, the court has neither struck the breach of fiduciary duty claims nor has it declared that the plaintiff's claims under Counts One, Three, Four, Five, and Six are time-barred. The court should declare that those claims are time-barred because, as claims essentially asserting violation of fiduciary duty as the wrong entitling the plaintiff to relief, they are contract claims governed by the six-year period of limitations provided by G. L. c. 260, § 2. *Brodeur* v. *American Rexoil Heating Fuel Co.,* 13 Mass. App. Ct. 939, 940 (1982). The court, at the very least, should declare that the only claim now open is the claim that the lease and its amendments are void as unlawful attempts to divide the

"common areas and facilities" of a condominium. G. L. c. 183A, § 5 (*c*).

In my view, however, the defendants are not only entitled to summary judgment with respect to the counts other than Count Two, but they are entitled to summary judgment as to that count as well. It is highly doubtful that an action to have a lease declared void under G. L. c. 183A, § 5 (*c*), may properly be considered an "action for the recovery of land" within the meaning of G. L. c. 260, § 21. Heretofore in our case law the application of that statute has been limited to actions by persons alleging an immediate right of possession against others asserting adverse possession. No claim is made in this case that the defendants are in possession of any portion of the condominium property.

Of greater importance, however, is that it is clear from the pleadings and the materials available to the judge for summary judgment purposes that the plaintiff's claim, in Count Two, viewed substantively, is without merit. As the court states, the lease and the master deed were recorded at 9:56 A.M. on June 16, 1977. *Ante* at 481 n.4. The master deed states that it is subject to the lease. It is abundantly clear that the interest transferred to David Zussman by the lease executed by Selma Zussman, who was never a condominium unit owner or a trustee of the condominium trust, never was part of the condominium trust property. The common areas and facilities were subject to the lease (and to implied rights of ingress and egress) before and at the time of the trust's inception. "It can make no difference that the [lease and master deed] were all entered of record at the same moment. The law arranges acts performed, or things done, in one day, and relative to the same subject matter, so as to render them conformable to the intention of the parties." *Clark* v. *Brown,* 3 Allen 509, 511 (1862). See *Harding* v. *Broadway Nat'l Bank,* 294 Mass. 13, 19-20 (1936). Thus, the lease, with the right of access to and egress from the leased parking spaces implied therein, does not represent even an attempted division of the condominium's common areas and facilities. Surely, too, it is not an "action for partition or division," nor is it a "covenant or provision" therefor to which c. 183A, § 5 (*c*), is addressed.

While it may be that the plaintiff's claim based on breach of fiduciary duty has substantive merit, that claim is time-barred. The plaintiff has no other claim that raises a substantial question of material fact. The defendants are entitled to summary judgment. I would affirm the judgment below.