BEACONSFIELD TOWNE HOUSE CONDOMINIUM TRUST *vs.*
DAVID ZUSSMAN, trustee,[1] & others.[2]

Norfolk. October 7, 1993. - December 7, 1993.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Real Property*, Condominium, Lease. *Condominiums*, Common area,
Master deed. *Easement*.

A 155-year lease of a portion of the common areas owned by a condomin-
ium trust, purporting to establish a leasehold interest in twelve parking
spaces, did not divide the condominium common areas and facilities in
violation of G. L. c. 183A, § 5 (*c*), where the property was subject to
the lease when the condominium trust was created and when the prop-
erty was submitted to the provisions of c. 183A so that the leased area
was never part of the condominium's common areas and facilities. [507-
508]

An amendment to a lease of a portion of the common areas owned by a
condominium trust, executed after the premises were made subject to
G. L. c. 183A, added to the common area, and hence the amendment
did not divide the common areas and facilities in violation of G. L. c.
183A, § 5 (*c*); nor did a second amendment to the lease effect either a
change in rights or a division of the common areas and facilities, where
it simply described an easement that already existed by implication
pursuant to the original lease. [508-509]

CIVIL ACTION commenced in the Superior Court Depart-
ment on April 25, 1984.

After the decision of this court in 401 Mass. 480 (1988),
motions for summary judgment were heard by *Andrew G.
Meyer*, J.

The Supreme Judicial Court granted a request for direct
appellate review.

---

[1]Of the Davran-St. Paul Trust, and individually.

[2]Davran-St. Paul Trust, 120 Beaconsfield Realty Trust, and Selma G.
Zussman, individually and as trustee of the 120 Beaconsfield Realty Trust.

*Henry P. Sorett* for the plaintiff.

*Charles R. Bennett, Jr.,* for the defendants.

WILKINS, J. In *Beaconsfield Towne House Condominium Trust v. Zussman,* 401 Mass. 480 (1988) (*Beaconsfield I*), this court determined that the plaintiff condominium trust's action was time-barred (*id.* at 481 n.3) except for its claim that a portion of the trust's common area had been leased in violation of G. L. c. 183A, § 5 (*c*) (1992 ed.). *Beaconsfield I, supra* at 486. Section 5 (*c*) provides that "common areas and facilities shall remain undivided," unless the unit owners agree otherwise, and that any provision to the contrary is void.

A judge of the Superior Court considered the merits of the § 5 (*c*) claim on cross motions for summary judgment and ordered judgment for the defendants. We granted the condominium trust's application for direct appellate review. We affirm the judgment.

The defendants David and Selma Zussman developed the condominium at 120 Beaconsfield Road in Brookline. On June 1, 1977, Selma Zussman, as trustee of 120 Beaconsfield Realty Trust, the then owner of the premises, granted a 155-year lease to David Zussman, as trustee of the Davran-St. Paul Trust, of twelve of the forty-three parking spaces shown on a plan of the first floor of the building at 120 Beaconsfield Road. A notice of the lease was recorded with the Norfolk County registry of deeds on June 10, 1977 (Book 5343, Page 555). The lease provided that the annual rent for the twelve parking spaces was $1.00, that it could not be terminated for nonpayment of rent, that the lessor and her successors were to bear all taxes and operating expenses (including insurance, maintenance, and restoration) relating to the leased area, and that the lease was binding on and for the benefit of successors and assigns.

On the same day, a master deed submitting the premises to the provisions of G. L. c. 183A, signed by Selma Zussman as trustee of 120 Beaconsfield Realty Trust and David Zussman as trustee of the Davran-St. Paul Trust, was executed and recorded with the Registry of Deeds (Book 5343, Page

559). That master deed stated that the Davran-St. Paul Trust was a tenant under a lease from the 120 Beaconsfield Realty Trust and that David Zussman as trustee of the Davran-St. Paul Trust acknowledged that "the reversion under [the] lease is included in the common areas and facilities" of the condominium. Next, the declaration of trust, dated June 10, 1977, creating the plaintiff condominium trust, was recorded.

The plaintiff condominium trust argues that we should look at the attempted over-all scheme and declare that its effect was to carve out a portion of the common area of the condominium for the benefit of the developers and unlawfully to burden the trust with costs and expenses that are attributable to the twelve leased parking spaces. This, the trust says, violates the statutory prohibition against the division of common areas and facilities. The defendants, on the other hand, point to the fact that the lease was entered into and recorded before the property was submitted to the provisions of G. L. c. 183A and before the declaration of trust was executed and recorded. They further emphasize the fact that the lease and its terms were fully disclosed of record, so that every unit purchaser had notice of the burden imposed by the long-term, cost-free use of the twelve leased parking spaces in the garage.[3]

Because the property was subject to the 155-year lease when the condominium trust was created and when the property was submitted to the provisions of G. L. c. 183A, the lease did not divide the common areas and facilities in violation of G. L. c. 183A § 5 (*c*). The leased area was never part of the condominium's common areas and facilities.[4] The

---

[3]The standard form of purchase and sale agreement for units in the condominium also disclosed that twelve parking spaces were subject to a prior lease. This fact is not crucial to our decision.

In theory (there is nothing in the record to indicate what happened in practice), the cost of the units should have been less than it would have been if the units had not been burdened with expenses relating to the twelve parking spaces.

[4]In *Beaconsfield I*, Justice O'Connor in dissent observed that the lease "does not represent even an attempted division of the condominium's com-

Zussmans intended that the condominium interests be sub-
ject to the lease, a fact that was or reasonably should have
been apparent to purchasers of units.

Although the instruments were recorded on the same day
and the lease created an interest in the nature of a servitude
that is binding on the condominium as successor lessor, the
purpose of § 5 (*c*) was not violated. In *Commercial Wharf E.
Condominium Ass'n* v. *Waterfront Parking Corp.*, 407 Mass.
123 (1990), *S.C.*, 412 Mass. 309 (1992), where the master
deed was subject to a prior, recorded interest in the condo-
minium land in favor of the developer, we stated that the
fact "[t]hat the master deed makes the fee interest subject to
a prior interest is not violative of § 5 (*c*)." *Id.* at 130. "Since
the interest retained by the developer never became part of
the condominium common area, its retention does not consti-
tute a division of the common area." *Id.* at 131.[5]

We consider one further issue arising from two purported
amendments of the lease that were executed after the prem-
ises were made subject to the condominium law. On June 27,
1977, the lease was amended to exclude a portion of the
premises, a storage area, that had been made part of the
original leasehold. This amendment added to the common
area, and hence the amendment did not divide the common
areas or facilities in violation of G. L. c. 183A, § 5 (*c*). On
July 22, 1977, the lease was amended to include access to the
twelve leased spaces.[6] No assent of the condominium trustees
or of the unit owners was obtained, nor was the master deed
amended. The second lease, however, effected neither a

mon areas and facilities." *Beaconsfield I, supra* at 490 (O'Connor, J., dis-
senting). He believed that, even if the statute of limitations had not run on
the § 5 (*c*) claim, the summary judgment should be affirmed because it
was clear that the prohibition of § 5 (*c*) had not been violated. *Id.*

[5]The master deed properly could have excluded all forty-three parking
spaces from the common areas and facilities. See G. L. c. 183A, § 1 (1992
ed.). The exclusion of twelve parking spaces presents no violation of G. L.
c. 183A, § 5 (*c*), nor does the burden of the servitude.

[6]The amendment gave the right to pass and repass to and from the park-
ing spaces over the driveways, passageways, exits, and entrances shown on
the plan referred to in the lease.

change in rights nor a division of the common areas and fa-
cilities. It simply described an easement that already existed
by implication pursuant to the original lease. See *Labounty*
v. *Vickers*, 352 Mass. 337, 344 (1967); *Commonwealth* v.
*Richardson*, 313 Mass. 632, 639 (1943).

*Judgment affirmed.*