416 Mass. 505 (1993)
623 N.E.2d 1115
BEACONSFIELD TOWNE HOUSE CONDOMINIUM TRUST
vs.
DAVID ZUSSMAN, trustee,[1] & others.[2]
Supreme Judicial Court of Massachusetts, Norfolk.
October 7, 1993.
December 7, 1993.
Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.
*506 Henry P. Sorett for the plaintiff.
Charles R. Bennett, Jr., for the defendants.
WILKINS, J.
In Beaconsfield Towne House Condominium Trust v. Zussman, 401 Mass. 480 (1988) (Beaconsfield I), this court determined that the plaintiff condominium trust's action was time-barred (id. at 481 n. 3) except for its claim that a portion of the trust's common area had been leased in violation of G.L.c. 183A, § 5 (c) (1992 ed.). Beaconsfield I, supra at 486. Section 5 (c) provides that "common areas and facilities shall remain undivided," unless the unit owners agree otherwise, and that any provision to the contrary is void.
A judge of the Superior Court considered the merits of the § 5 (c) claim on cross motions for summary judgment and ordered judgment for the defendants. We granted the condominium trust's application for direct appellate review. We affirm the judgment.
The defendants David and Selma Zussman developed the condominium at 120 Beaconsfield Road in Brookline. On June 1, 1977, Selma Zussman, as trustee of 120 Beaconsfield Realty Trust, the then owner of the premises, granted a 155-year lease to David Zussman, as trustee of the Davran-St. Paul Trust, of twelve of the forty-three parking spaces shown on a plan of the first floor of the building at 120 Beaconsfield Road. A notice of the lease was recorded with the Norfolk County registry of deeds on June 10, 1977 (Book 5343, Page 555). The lease provided that the annual rent for the twelve parking spaces was $1.00, that it could not be terminated for nonpayment of rent, that the lessor and her successors were to bear all taxes and operating expenses (including insurance, maintenance, and restoration) relating to the leased area, and that the lease was binding on and for the benefit of successors and assigns.
On the same day, a master deed submitting the premises to the provisions of G.L.c. 183A, signed by Selma Zussman as trustee of 120 Beaconsfield Realty Trust and David Zussman as trustee of the Davran-St. Paul Trust, was executed and recorded with the Registry of Deeds (Book 5343, Page *507 559). That master deed stated that the Davran-St. Paul Trust was a tenant under a lease from the 120 Beaconsfield Realty Trust and that David Zussman as trustee of the Davran-St. Paul Trust acknowledged that "the reversion under [the] lease is included in the common areas and facilities" of the condominium. Next, the declaration of trust, dated June 10, 1977, creating the plaintiff condominium trust, was recorded.
The plaintiff condominium trust argues that we should look at the attempted over-all scheme and declare that its effect was to carve out a portion of the common area of the condominium for the benefit of the developers and unlawfully to burden the trust with costs and expenses that are attributable to the twelve leased parking spaces. This, the trust says, violates the statutory prohibition against the division of common areas and facilities. The defendants, on the other hand, point to the fact that the lease was entered into and recorded before the property was submitted to the provisions of G.L.c. 183A and before the declaration of trust was executed and recorded. They further emphasize the fact that the lease and its terms were fully disclosed of record, so that every unit purchaser had notice of the burden imposed by the long-term, cost-free use of the twelve leased parking spaces in the garage.[3]
Because the property was subject to the 155-year lease when the condominium trust was created and when the property was submitted to the provisions of G.L.c. 183A, the lease did not divide the common areas and facilities in violation of G.L.c. 183A § 5 (c). The leased area was never part of the condominium's common areas and facilities.[4] The *508 Zussmans intended that the condominium interests be subject to the lease, a fact that was or reasonably should have been apparent to purchasers of units.
Although the instruments were recorded on the same day and the lease created an interest in the nature of a servitude that is binding on the condominium as successor lessor, the purpose of § 5 (c) was not violated. In Commercial Wharf E. Condominium Ass'n v. Waterfront Parking Corp., 407 Mass. 123 (1990), where the master deed was subject to a prior, recorded interest in the condominium land in favor of the developer, we stated that the fact "[t]hat the master deed makes the fee interest subject to a prior interest is not violative of § 5 (c)." Id. at 130. "Since the interest retained by the developer never became part of the condominium common area, its retention does not constitute a division of the common area." Id. at 131.[5]
We consider one further issue arising from two purported amendments of the lease that were executed after the premises were made subject to the condominium law. On June 27, 1977, the lease was amended to exclude a portion of the premises, a storage area, that had been made part of the original leasehold. This amendment added to the common area, and hence the amendment did not divide the common areas or facilities in violation of G.L.c. 183A, § 5 (c). On July 22, 1977, the lease was amended to include access to the twelve leased spaces.[6] No assent of the condominium trustees or of the unit owners was obtained, nor was the master deed amended. The second lease, however, effected neither a *509 change in rights nor a division of the common areas and facilities. It simply described an easement that already existed by implication pursuant to the original lease. See Labounty v. Vickers, 352 Mass. 337, 344 (1967); Commonwealth v. Richardson, 313 Mass. 632, 639 (1943).
Judgment affirmed.
NOTES
[1] Of the Davran-St. Paul Trust, and individually.
[2] Davran-St. Paul Trust, 120 Beaconsfield Realty Trust, and Selma G. Zussman, individually and as trustee of the 120 Beaconsfield Realty Trust.
[3] The standard form of purchase and sale agreement for units in the condominium also disclosed that twelve parking spaces were subject to a prior lease. This fact is not crucial to our decision.

In theory (there is nothing in the record to indicate what happened in practice), the cost of the units should have been less than it would have been if the units had not been burdened with expenses relating to the twelve parking spaces.
[4] In Beaconsfield I, Justice O'Connor in dissent observed that the lease "does not represent even an attempted division of the condominium's common areas and facilities." Beaconsfield I, supra at 490 (O'Connor, J., dissenting). He believed that, even if the statute of limitations had not run on the § 5 (c) claim, the summary judgment should be affirmed because it was clear that the prohibition of § 5 (c) had not been violated. Id.
[5] The master deed properly could have excluded all forty-three parking spaces from the common areas and facilities. See G.L.c. 183A, § 1 (1992 ed.). The exclusion of twelve parking spaces presents no violation of G.L.c. 183A, § 5 (c), nor does the burden of the servitude.
[6] The amendment gave the right to pass and repass to and from the parking spaces over the driveways, passageways, exits, and entrances shown on the plan referred to in the lease.