Neel, J.
In this action plaintiffs seek a declaratory judgment voiding an easement on their property. The complaint alleges violation of G.L.c. 183A, failure of consideration, breach of fiduciary duty, trespass, and nuisance. Defendants move to dismiss or, alternatively, for summary judgment. For the following reasons, defendants’ motion for summary judgment is allowed as to Count II (failure of consideration) and is otherwise denied, and summary judgement shall enter against defendants as to Count I (violation of G.L.c. 183A). See Mass.R.Civ.P. 56(c).
BACKGROUND
The following facts are not genuinely disputed.
On December 21, 1987, predecessors of the defendant development companies, Howard Fafard, individually and as President and Treasurer of Ledgemere Land Corporation, and Ledgemere Condominium Corporation, obtained a special permit from the City of Marlborough to construct a condominium development on a parcel of land known as Indian Hill (“the special permit”). The special permit requires the developers to provide child play areas with suitable play equipment. Indian Hill includes land that defendants later split into three separate independent condominium developments: Williamsburg Heights Condominium (“Williamsburg Heights”), Violet Woods Condominium (“Violet Woods”), and Rose Pointe Condominium (“Rose Pointe”). Each of the condominium developments has a corresponding organization of unit owners (“Williamsburg Heights Condominium Trust,” etc.).
Defendant Fafard Real Estate and Development Corp. (“Fafard Development”) is the parent corporation of Indian Development Corp. (“Indian Development”), Violet Woods Development Corp. (“Violet Woods Development”), and Rose Pointe Development Corp. (“Rose Pointe Development”). Indian Development is the developer of Williamsburg Heights. Violet Woods Development is the developer of Violet Woods. Rose Pointe Development is the developer of Rose Pointe.
In September 1997, defendant Lawrence Doane was a trustee of Violet Woods Trust and Rose Pointe Trust, and was the sole trustee of Williamsburg Heights Trust. On September 18, 1997, Doane signed an agreement granting to Violet Woods Trust and Rose Pointe Trust an easement over specified common areas within Williamsburg Heights (“the easement agreement”). Doane signed the agreement both as grantor (in his capacity as trustee of Williamsburg Heights Trust) and as grantee (in his capacity as trustee of Violet Woods Trust (together with co-trustees Peter Daly and Eric Himmel) and as trustee of Rose Pointe Trust). The other signatories to the agreement are Rose Pointe Development (by Richard Terrill, Senior Vice President and Chief Financial Officer), Indian *36 Development (by Richard Terrill, Controller), and Violet Woods Development (by Richard Terrill, Controller). Fafard Development was not a party to the easement agreement. Williamsburg Heights’ current trustees (plaintiffs Warren Donovan, Julaine Hansen, and Linda Custer) were not trustees at the time Doane granted the easement, and they were not involved in Doane’s grant of the easement to Violet Woods Trust and Rose Pointe Trust.
Although at least ten unit owners had earlier requested, in writing, timely written notice of any proposed action requiring the consent of a specified percentage of eligible mortgage holders, Doane did not seek the approval or consent of, nor did he provide notification to, any unit owners or mortgagees of Williamsburg Heights before entering into the easement agreement.
The easement agreement provides, inter alia, that Indian Development, Violet Woods Development, and Rose Pointe Development will provide specified “equipment, labor, or funds” to construct a basketball court and play area on common areas in Williamsburg Heights. The agreement grants Violet Woods Trust and Rose Pointe Trust an easement for the use and enjoyment of the recreational facilities. The agreement also creates a Recreational Facilities Board to establish rules and regulations for the use of the recreational facilities on Williamsburg Heights, and gives one vote each to Williamsburg Heights Trust, Violet Woods Trust, and Rose Pointe Trust.
The defendants constructed recreational facilities on common areas in Williamsburg Heights in order to satisfy the terms of the special permit. After construction of the basketball court and playground on Williamsburg Heights common areas, numerous unit owners complained about excessive noise, and at least one unit owner complained that children play baseball on the basketball court and hit balls, rocks and other items against her house. That unit owner has threatened to sue Williamsburg Heights as a result of the use of the basketball court.
DISCUSSION
For purposes of a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Massachusetts Rules of Civil Procedure, allegations in the complaint must be treated as true and the plaintiff is entitled to all favorable inferences. See General Motors Acceptance Corp. v. Abington Casualty Ins. Co., 413 Mass. 583, 584 (1992). A motion to dismiss should be granted only if “it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.” General Motors Acceptance Corp., 413 Mass. at 584, quoting Nader v. Citron,, 372 Mass. 96, 98 (1977), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Treating the allegations in the complaint and all favorable inferences as true, each count states a claim which would entitle Williamsburg Heights Trust to relief. See General Motors Acceptance Corp., 413 Mass. at 584.
Summary judgment is appropriate when no issue of material fact is in dispute and the moving party is entitled to judgment as a matter of law. See Mass R. Civ. P. 56(c); see also Highlands Ins. Co. v. AerovoxInc., 424 Mass. 226, 232 (1997). A moving party that does not bear the burden of proof at trial is entitled to summary judgment if it submits affirmative evidence, unmet by countervailing materials, that either negates an essential element of the nonmoving party’s case or demonstrates that the nonmoving party has no reasonable expectation of proving an essential element of its case. See Kourouvacilis v. General Motor Corp., 410 Mass. 706, 716 (1991).
A. Violation of G.L.c. 183A (Count I)
Massachusetts condominium law is governed by G.L.c. 183A. Section 5 of that statute deals with interests in and the granting of easements over common areas. Section 5(a) provides that a condominium unit owner is entitled to an undivided interest in the common areas in the same proportion as the value of his unit compared to the aggregate value of all units. G.L.c. 183A, §5(a). Section 5(b) of the statute addresses the manner of granting easements, and the effect thereof on unit owners’ interests.
Before its amendment in 1998, section 5(b) provided, in pertinent part:
The percentage of the undivided interest of each unit owner in the common areas and facilities as expressed in the master deed shall not be altered without the consent of all unit owners whose percentage of the undivided interest is affected, expressed in an amended master deed duly recorded. The organization of unit owners shall have the power, as attorney in fact on behalf of all unit owners and their successors in title, to grant modify or amend easements through or over the common areas and facilities and to accept easements bene-fitting the condominium or any portion thereof, including, without limitation, easements for public or private utility purposes . . . provided, however, that at the time of creation of such easement and at the time of the modification or amendment of any such easement, such easement and any such modification and amendment shall not be inconsistent with the peaceful and lawful use and enjoyment of the condominium property by the owners thereof
G.L.c. 183A, §5(b).
As amended by St. 1998, c. 242, the language of G.L.c. 183A, §5(b) now provides, in pertinent part:
(1) The percentage of the undivided interest of each unit owner in the common areas and facilities as expressed in the master deed shall not be altered without the consent of all unit owners whose percentage of the undivided interest is affected, ex *37 pressed in an amended master deed duly recorded . . . The granting of an easement by the organization of unit owners, or the designation or allocation by the organization of unit owners of limited common areas and facilities, or the withdrawal of a portion of the common areas and facilities, all as provided for in this subsection, shall not be deemed to effect or alter the undivided interest of any unit owner.
(2) The organization of unit owners, acting by and through its governing body, shall have the power and authority, as attorney in fact on behalf of all unit owners from time to time owning units in the condominium ... to:
(i) Grant, modify and amend easements through, over and under the common areas and facilities, and to accept easements benefitting the condominium . . . and unit owners . . . provided, however, that the consent of at least 51 per cent of the number of all mortgagees holding first mortgages on units within the condominium who have requested to be notified thereof. .. and provided, further, that at the time of creation of such easement and at the time of modification or amendment of any such easement, such easement and any such modification or amendment shall not be inconsistent with the peaceful and lawful use and enjoyment of the common condominium property by the owners thereof
G.L.c. 183A, §5(b) (emphasis added to new language not appearing in pre-1998 amendment statute). The amended language specifically states that the granting of an easement shall not be deemed to affect the undivided interest of any unit owner. G.L.c. 183A, §5(b)(l). Under the amended statute, the granting of easements would require the consent of at least 51 percent of the mortgagees holding first mortgages who requested notification. G.L.c. 183A, §5(b)(l), (b)(2)(i).
The 1998 amending legislation also includes a ret-roactivity provision that reads as follows: “. . . this act shall apply to all master deeds, and amendments thereto, without regard to whether such master deed or amendment was recorded before on or after the effective date of this act. . .” St. 1998, c. 242, §11.
1. Retroactive Application of 1998 Amendment
In order to determine whether the easement is valid, the Court must first decide which version of G.L.c. 183A, §5(b) applies. The easement agreement was executed on September 18, 1997. Unless the 1998 amendment applies retroactively, the pre-amendment statute governs the easement.
A statute is retroactive if there is an express legislative directive mandating retroactive application or implicit legislative intent that the statute apply retroactively. See Fontaine v. EBTEC Corp., 415 Mass. 309, 318 (1993) (“In the absence of an express legislative directive ... all statutes are prospective in their operation, unless an intention that they shall be retrospective appears by necessary implication from their words, context or objects when considered in the light of the subject matter . . .”). “Absent language mandating retrospective application of an amendment, the amended statute should not be applied to conduct occurring prior to the effective date of the amendment.” Quintal v. Comm’r of the Dep’t of Employment and Training, 418 Mass. 855, 856 n. 1 (1994).
As noted above, the 1998 legislation amending G.L.c. 183A, §5(b) includes a provision making the act retroactive with respect to master deeds and amendments to master deeds, regardless of when the master deed or amendment was recorded. St. 1998, c. 242, §11.[2] In this case, there is no evidence before the Court that the easement was granted by means of an amendment to the Williamsburg Heights master deed. Instead, undisputed evidence indicates that the easement was granted by means of the easement agreement. The legislature did not expressly make St. 1998 c. 242 retroactive with regard either to easements or to such agreements, nor does the language of §11 necessarily imply a legislative intent to apply the act retroactively to either. Accordingly, the easement in this case is governed by the pre-1998 amendment language of G.L.c. 183A, as in effect in 1997.[3]
2. Pre-1998 Amendment Language of G.L.c. 183A
General Laws c. 183A, §5(b) as in effect when the easement agreement was executed in 1997 provides that “(t]he percentage of undivided interest of each unit owner in the common areas and facilities as expressed in the master deed shall not be altered without the consent of all unit owners whose percentage of the undivided interest is affected, expressed in an amended master deed duly recorded.” G.L.c. 183A, §5(b); see Kaplan v. Boudreaux, 410 Mass. 435, 438 (1991) (interpreting identical language in G.L.c. 183A, §5(b) as amended by St. 1987, c. 87). The issue here is whether the 1997 easement agreement, granting use of common areas within Williamsburg Heights to the neighboring Violet Woods and Rose Pointe Trusts, and giving voting control over the use of those common areas to those other condominium trusts, alters Williamsburg Heights unit owners’ undivided interests in the common areas. If so, then the applicable G.L.c. 183A, §5(b) on its face requires unanimous consent of the unit owners, and amendment to the master deed, in order for the easement to be valid.
Case law in the Commonwealth indicates that some easements are sufficient to change the interest of unit owners in common areas. “It is not necessary ... to transfer the sum of one owner’s interests in a portion of land in order to change the comparative interests held by each. Transfer of an interest that is smaller than an ‘ownership’ interest would suffice to alter the percentage interest held by each.” Kaplan, 410 Mass. at 440 (holding that an amendment to the .bylaws *38 providing for an exclusive use easement was invalid for failure to obtain unanimous consent of the unit owners). While the court in Kaplan attributed particular significance to the fact that the grant was for exclusive use of a common area, the court also pointed out that “[t)here is a distinct difference between . . . cases, in which . . . use, control, and/or ownership of the common areas is taken from some or all of the unit owners and cases in which some reasonable restrictions or regulation of the common areas is imposed on all owners.” 410 Mass. at 443, quoting Jarvis v. Stage Neck Owners Ass’n., 464 A.2d 952, 956 (Me. 1983).
In this case, the easement agreement did not grant exclusive use of the common areas. Nor did the easement exclude any of the Williamsburg Heights unit owners from their common areas. The easement agreement did, however, take control over the use of the recreational facilities on Williamsburg Heights’ common areas away from all of the unit owners. See Kaplan, 410 Mass. at 443. It did so by establishing the Recreational Facilities Board to promulgate rules and regulations for the use of the recreational facilities on Williamsburg Heights, and by giving one vote each to Williamsburg Heights Trust, Violet Woods Trust, and Rose Pointe Trust. The grant to Violet Woods Trust and Rose Pointe Trust of controlling votes over the Williamsburg Heights common areas distinguishes this case from cases which impose reasonable restrictions or regulation of the common areas. See Kaplan, 410 Mass. at 443; cf. Strauss v. Oyster River Condominium Trust, 417 Mass. 442 (holding that expansions into the common area altered the percentage of undivided interest and violated G.L.c. 183A, §5 because they were not approved by all unit owners, but that landscaping and construction of parking spaces were improvements in the common area and did not violate the statute because no unit owner was denied access). Because the defendants did not obtain unanimous consent of the unit owners and did not amend the master deed, as required under G.L.c. 183A, §5(b) as in effect in 1997, the easement is invalid. See Kaplan, 410 Mass. at 438.[4]
B.Failure of Consideration (Count II)
Plaintiffs claim that there was no consideration for the easement agreement. “The requirement of consideration is satisfied if there is either a benefit to the promisor or a detriment to the promisee.” Marine Contractors Co., Inc. v. Hurley, 365 Mass. 280, 286 (1974). In this case, it cannot genuinely be disputed that Williamsburg Heights benefitted (in the legal sense, at least) by the new basketball court and play area constructed on its common areas by Indian Development, Violet Woods Development, and Rose Pointe Development, in accordance with Section III. I. of the easement agreement. Accordingly, summary judgment shall enter as to Count II.
C.Breach of Fiduciary Duty for Willful Misconduct and Bad Faith (Count III)
Plaintiffs’ claim of breach of fiduciary duty involves questions of material fact, and is not appropriate for summary judgment.
D. Trespass (Count IV)
In order to sustain an action for trespass, the plaintiffs must prove two elements: (1) that the plaintiff had actual possession of the property and (2) that defendants’ entry was intentional and illegal. See New England Box Co. v. C&R Constr. Co., 313 Mass. 696, 707 (1943); see also Edgarton v. H.P. Welch Co., 321 Mass. 603, 612-13 (1947) (requiring a voluntary act of entry for trespass); Restatement (Second) of Torts, §157. With regard to the first element, “the plaintiff is not required to prove ownership or title because the gist of the action is protection from interference with possession not title although proof of title . . . creates a prima facie case for the right to possession.” Nolan and Sartorio, Massachusetts Practice §51, at 51 (2d ed. 1989) (citing Kostopolos v. Pezzetti, 207 Mass. 277, 280 (1911)). The second element, intentional, illegal entry, is accomplished by a voluntary act of entry without right or license. See Edgarton, 321 Mass. at 612-13; see also Shawsheen River Estates Assocs. Ltd. Partnership v. Herman, Civil No. 95-1557, 3 Mass. L. Rptr. 475 (Mass. Super. Ct. April 11, 1995) (“Any entry without right or license is illegal”) (quoting Blatt v. McBarron, 161 Mass. 21, 22-23 (1894)).
There is no dispute that the plaintiffs possess the common areas located in Williamsburg Heights. It is clear from the summary judgment record that the defendants’ entry onto Williamsburg Heights’ common areas was intentional. See Edgarton, 321 Mass. at 612-613. Although the easement is invalid, a question of fact remains whether the easement agreement created any other right or license to enter Williamsburg Heights’ common areas. Accordingly, summary judgment is denied as to trespass.
E. Nuisance (Count V)
Defendants argue that they do not own the land in question, and therefore cannot be liable for any nuisance thereon. To be liable in nuisance, “it is not necessary for an individual to own the property on which the objectionable condition is maintained . . . Rather, ‘liability for damage . . . turns upon whether a defendant [controls the property], either through ownership or otherwise.’ ’’ Belanger v. Commonwealth, 41 Mass.App.Ct. 668, 670 n.3 (1996), quoting Kurtigian v. Worcester, 348 Mass. 284, 285 (1965). Here, evidence of Violet Woods Trust’s and Rose Pointe Trust’s voting control over the Recreational Facilities Board at least raises a genuine issue as to whether control is established for purposes of the nuisance claim. Accordingly, the Court denies summary judgment as to Count V.
*39 ORDER
For the foregoing reasons, the defendants’ motion for summary judgment is ALLOWED as to Count II, and is DENIED as to Counts I, III, IV, and V. It is further ORDERED that summary judgment shall enter against defendants as to Count I.

Although an easement may be granted by amendment to a master deed, it does not have to be so to be enforceable. See Podell v. Lahn, 38 Mass.App.Ct. 688, 693 (1995) (easement as amendment to master deed); see also Commercial Wharf East Condominium Ass’n v. Waterfront Parking Corp., 407 Mass. 123, 129-133 (1990) (easement recorded prior to recording master deed).

Section 5(b) had previously been amended in 1994 (effective Jan. 1, 1996), St. 1994, c. 365, §2.

Because the Court rules that the easement is invalid, it is not necessary to address the statutory requirement that the easement not be "inconsistent with the peaceful and lawful use and enjoyment of the condominium property.” G.L.c. 183A, §5(b).